663 S.E.2d 536

Solomon H. TAYLOR

v.

COMMONWEALTH of Virginia.

Record No. 0773–07–4.

Court of Appeals of Virginia,
Alexandria.

July 22, 2008.

Paul E. Pepper, Deputy Public Defender, for appellant.

Josephine F. Whalen, Assistant Attorney General II (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: McCLANAHAN, PETTY, JJ., and ANNUNZIATA, S.J.

ANNUNZIATA, Judge.

Solomon H. Taylor (appellant) contends the trial court erred in: (a) denying his motions to suppress incriminating statements he made to police; (b) refusing to suppress identifications made by the robbery victims after viewing a photo array; and (c) finding sufficient evidence to support his robbery convictions. Finding no error, we affirm appellant's convictions.

## BACKGROUND

Detectives Thomas Buckley and Robert Hickman investigated several robberies that took place in Alexandria on March 25 and 26, 2006. After reviewing cell phone records from a cell phone stolen during one of the robberies, they located and contacted an individual in Maryland who identified appellant as a suspect. Buckley investigated appellant's criminal history and learned he was in custody in Baltimore. After Buckley obtained a copy of appellant's booking photo, he placed it with five other photos for a photo lineup and showed it to several robbery victims, who identified appellant's photo as depicting the robber.

Buckley obtained an arrest warrant for appellant and contacted Maryland authorities, who advised Buckley that appellant had been released. Later, Buckley learned that appellant had been arrested and was being held in Prince George's County, Maryland on the Alexandria arrest warrant. After appellant executed an extradition waiver before a Maryland judicial officer, Buckley transported him to police headquarters in Virginia where he was advised of his *Miranda* rights,

and then made certain incriminating statements. His motion to suppress the incriminating statements was denied.

Appellant was subsequently convicted of three counts of robbery. He was found not guilty of one count of attempted robbery and four counts of using a firearm during those felonies.

## A. REFUSAL TO SUPPRESS STATEMENTS

■ Appellant contends the trial court erred in refusing to suppress his incriminating statements to police. The argument is without merit.

In finding appellant guilty of the three robberies, the trial judge found "that those counts have been proven, beyond a reasonable doubt, *even without considering the Defendant's statement that had been ruled admissible in this case.*" (Emphasis added.) Continuing, the trial judge stated, "[t]he Court finds the eyewitness identifications are to be conclusive in those particular counts and to establish Defendant's guilt beyond a reasonable doubt, *with no reference to the Defendant's statement elicited by the Detectives in the matter.*" (Emphasis added.) As to the related firearm charges, the trial court gave appellant "the benefit of his statement, . . . as being the only evidence as to the true nature of that gun," namely, that he used a toy gun in the robberies, and it found appellant not guilty of the firearm charges.

Because the trial court did not rely on appellant's incriminating statements in finding sufficient evidence to support the robbery convictions, we do not address their admissibility. *See Luginbyhl v. Commonwealth,* 48 Va.App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc* ) (holding that "we decide cases 'on the best and narrowest ground available' " (quoting *Air Courier Conference v. Am. Postal Workers Union,* 498 U.S. 517, 921–22, 531, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (Stevens, J., concurring))). Instead, we evaluate the other evidence to determine if it sufficed to support the convictions beyond a reasonable doubt. That sufficiency analysis is contained in Part C of this opinion.

### B. REFUSAL TO SUPPRESS IDENTIFICATIONS

■ Appellant contends showing the photo simultaneously to the victims was unduly suggestive and the trial court erred in refusing to suppress the victims' identifications of him as the perpetrator of the crimes. We disagree.

■ "A defendant seeking to suppress an out-of-court identification resulting from a photographic lineup bears a weighty burden of establishing both (1) that the procedure was impermissibly suggestive and (2) that this flaw created a substantial likelihood of irreparable misidentification." *Hodges v. Commonwealth*, 45 Va.App. 735, 773–74, 613 S.E.2d 834, 852 (2005), *rev'd on other grounds*, 272 Va. 418, 634 S.E.2d 680 (2006).

> In determining whether a photographic lineup was impermissibly suggestive under part (1) of the above test, a court should look to both the photographs themselves and the manner in which they were presented to the identifying witness. A valid lineup does not require that all the suspects or participants be alike in appearance and have the same description as long as nothing singles the accused out from the rest. Where police indicate to the witness prior to the witness' viewing the photographs that they have evidence that one of the people in the lineup committed the crime, the chance of misidentification is heightened.

*Id.* at 774–75, 613 S.E.2d at 853.

With regard to the manner in which photographs are presented, the United States Supreme Court has said:

> Th[e] danger posed [of misidentification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime.

*Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ Absent evidence of a process so suggestive as to "giv[e] rise to a 'very substantial likelihood of irreparable [mis]identification,'" the identification evidence is admissible, and "the weight to be attributed to the evidence [is] for the [fact finder] to decide." *Bryant v. Commonwealth,* 10 Va.App. 421, 427, 393 S.E.2d 216, 220 (1990) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977)).

The evidence in this case shows that Buckley and Hickman prepared a photo array containing six photos, one of which depicted appellant. Buckley showed the six photos to robbery victim Cakannaki McGraw simultaneously. Buckley did not tell her a possible suspect was depicted in the array, stating only that the individual who robbed her might or might not be depicted in the photo spread, but that if she saw the robber in one of the photos, she was to point him out. Buckley testified that McGraw positively identified appellant's photograph "[i]n approximately three seconds."

Buckley subsequently showed the identical photo simultaneously to robbery victim Veronica Clark, telling Clark the robber's photo might or might not be in the spread. Clark identified appellant's photo in "[a]pproximately two minutes."

Hickman showed *the* same six photo simultaneously to robbery victim Kayla Lowry, likewise telling her that the robber might or might not be depicted in the lineup and to take her time and see if she recognized anyone depicted in the photos. Lowry positively identified appellant's photo.[1]

We find the trial court did not abuse its discretion in admitting the identification testimony of the robbery victims. Each witness viewed the six photos separately. The six black and white photos the victims were shown depicted young black males similar in age and appearance. The backgrounds of the photographs were neutral, and no identifying characteristics

---

1. Hickman also showed the photo array to victim Albert Fraiser; however, the trial court struck the charges relating to him.

distinguished one from the other. *See Hodges,* 45 Va.App. at 775, 613 S.E.2d at 853. In addition, the detectives did not tell the witnesses the robber was in the photo spread, that they had a suspect in custody or otherwise suggest that the victims should choose appellants photograph.

Appellant contends, however, that showing the photos simultaneously to the witnesses was inherently suggestive and unreliable and that the procedure compelled the suppression of the subsequent identifications. In support of his argument, appellant relies on the *Report of the Virginia State Crime Commission, Mistaken Eyewitness Identification,* House Doc. No. 40 (2005) (the "Report"). The purpose of the Report was "to study mistaken identification in criminal cases" by reviewing cases where DNA test results exonerated persons convicted of a crime, to "examine the procedures used in traditional police lineups and photographic review," to "consider the sequential method as a procedure for identifying suspects" and to make "recommendations to improve the procedures for conducting lineups in the Commonwealth of Virginia." *Id.* at 3. In its Report, the Commission set forth six recommendations for training and accreditation based on the use of the sequential method. However, the Report does not find that the method of showing the photographs simultaneously is to be treated as per se unduly suggestive.[2] Indeed, nothing in the Report supplants the application of current law to determine whether simultaneously shown photographic lineups are unduly suggestive and unreliable.

In summary, given the procedures followed in this case, we cannot say the trial court erred in finding that the identification procedure employed here was not unduly suggestive.

## C. SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that, absent his incriminating statements and the victims' identification testimony, there was

---

2. As illustrative of the continued viability of the simultaneous method, the Commission included an attachment to the Report setting forth detailed procedures recommended by the U.S. Department of Justice for conducting *both* simultaneous and sequential lineups.

insufficient evidence to support his robbery convictions. In determining whether the evidence was sufficient, we do not consider appellant's incriminating statements since they were not considered by the trial court in determining guilt, and limit our consideration to the victims' identification testimony, which was properly admitted.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." *Davis v. Commonwealth*, 39 Va.App. 96, 99, 570 S.E.2d 875, 876–77 (2002). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Myers v. Commonwealth*, 43 Va.App. 113, 118, 596 S.E.2d 536, 538 (2004) (emphasis in original) (quoting *Crowder v. Commonwealth*, 41 Va.App. 658, 662–63, 588 S.E.2d 384, 386–87 (2003)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Kelly v. Commonwealth*, 41 Va.App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* at 257–58, 584 S.E.2d at 447 (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. *Wactor v. Commonwealth*, 38 Va.App. 375, 380, 564 S.E.2d 160, 162 (2002).

*Burrell v. Commonwealth*, 50 Va.App. 72, 84–85, 646 S.E.2d 35, 41–42 (2007).

The evidence shows that a man later identified by Lowry as the appellant approached her outside the security door to her apartment around 10:00 p.m. on March 25, 2006, showed her a gun, and demanded her purse, which she gave him. A light above the entrance enabled her to get a good look at the

robber's face and to provide a detailed description of the perpetrator to authorities. She told the police that she could positively identify the robber and approximately six weeks later, Lowry identified appellant as the robber in the photo array she was shown and identified him in court as well as the man who robbed her.

McGraw was walking on Jordan Street between 10:00 p.m. and 11:00 p.m. on March 25, 2006, when a black car swerved in front of her and stopped. A man she later identified as appellant exited the car, pointed a gun at her, and directed her to give him her purse. Sufficient lighting at the scene enabled McGraw to get a good look at the robber's face and to provide a detailed description of the robber. She later identified appellant as the perpetrator from the photo array she was shown and also identified him in court as the man who robbed her, testifying "I'm positive. I'll never forget [his] face."

A man approached Clark during the late night hours of March 25, 2006, tugged at her purse, and demanded that she give it to him. When Clark initially refused, the robber stood in front of her and showed her a gun. After refusing four times, Clark eventually complied and gave the robber her purse. The robber and another man, standing some distance away, then entered a waiting car and left. Sufficient lighting at the scene enabled Clark to get a good look at the robber and to remember his facial features well. She positively identified appellant's photo from the array as depicting the robber and also identified him in court as the robber.

Based on this record, we find the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt appellant was guilty of the three robberies.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*